UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PABLO MARIN-GALDINO,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT et al.,<br><br>Respondents. | CASE NO. 2:26-cv-02964-LK<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Pablo Marin-Galdino's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons set forth below, the Court denies the petition.[1]

## I. BACKGROUND

Marin-Galdino is a native and citizen of Mexico. Dkt. No. 9 at 1. In November 2007, he was arrested for driving under the influence, detained by local authorities at the King County Jail in Seattle, Washington, and thereafter detained by U.S. Immigration and Customs Enforcement ("ICE") and transferred to the Northwest ICE Processing Center ("NWIPC"). *Id.* at 2. ICE charged him as removable under Section 212(a)(6)(A)(i) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(a)(6)(A)(i), "as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

Attorney General." *Id.* Later in November 2007, an Immigration Judge ("IJ") ordered Marin-Galdino removed from the United States, and ICE removed him to Mexico. *Id.* at 3. Marin-Galdino subsequently re-entered the United States without inspection at an unknown time and location. *Id.*

On June 19, 2026, ICE Enforcement and Removal Operations Seattle Fugitives Operations team arrested Marin-Galdino "during a targeted enforcement operation" in Seattle. *Id.* ICE served him with three documents: Form I-200 (Warrant for Arrest of Alien), Form I-294 (Warning to Alien Ordered Removed or Deported), and Form I-871 (Notice of Intent/Decision to Reinstate Prior Order). *Id.*; *see* Dkt. Nos. 8-1, 8-2, 8-3 at 5. ICE detained him at NWIPC the same day. Dkt. No. 9 at 3. On June 29, 2026, Marin-Galdino claimed fear of return to Mexico. *Id.* On July 23, 2026, United States Citizenship and Immigration Services ("USCIS") determined that he "did not establish a reasonable fear of persecution or torture if returned to Mexico." *Id.* Marin-Galdino requested a review of the negative reasonable fear determination, and on July 29, 2026, an IJ "concurred with USCIS's negative reasonable fear findings[.]" *Id.* at 3–4. On July 31, 2026, Marin-Galdino appealed the IJ's determination to the U.S. Court of Appeals for the Ninth Circuit, where his appeal remains pending; his removal is currently stayed pending further order of the Ninth Circuit. *Id.* at 4; *see Marin Galdino v. Blanche*, No. 26-4871 (9th Cir. 2026). The record does not indicate the Marin-Galdino has requested or been provided with a bond hearing.

Marin-Galdino alleges that he "suffers from a serious and potentially vision-threatening condition affecting his left eye" following "complex surgery" in October 2025 for "a severe corneal ulcer, including a corneal transplant." Dkt. No. 1 at 5. He requires "close postoperative monitoring and treatment," including "regular in-person examinations at Harborview [Medical Center], consistent access to prescribed medications and eye drops four times per day, and appropriate hygienic conditions to minimize the risk of infection and further complications." *Id.* His physician opines that failure to abide by these care requirements could result in "infection or

further complications, which could result in permanent blindness and loss of his eye." Dkt. No. 2 at 1.[2]

On August 20, 2026, Marin-Galdino filed a petition for a writ of habeas corpus. Dkt. No. 1. On September 4, 2026, Respondents[3] filed a return. Dkt. No. 7. On September 9, 2026, Marin-Galdino filed a traverse. Dkt. No. 11.[4]

## II. DISCUSSION

Marin-Galdino contends that his ongoing detention is unconstitutional, considering his eye injury and the risk to permanent injury or blindness posed by his continued detention. Dkt. No. 1 at 6–9. He requests the Court waive any prudential exhaustion requirements, and argues that his continued detention is no longer permissible because his removal is not reasonably foreseeable given that the Ninth Circuit has stayed his removal. *Id.* at 9–12 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). As a remedy for this alleged constitutional violation, Marin-Galdino seeks immediate release under conditions of supervision. *Id.* at 13–14.

---

[2] Marin-Galdino included as an exhibit to his petition a note dated July 24, 2026 and signed by Dr. Mihn T. Nguyen, Assistant Professor of Medicine at the University of Washington. Dkt. No. 2. The exhibit is unauthenticated by any declaration or other document verifying its authenticity. *See* Fed. R. Evid. 901(a) ("the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is"); LCR 7(b)(1) ("If the motion requires consideration of facts not appearing of record, the movant shall also serve and file copies of all affidavits, declarations, . . . or other evidence presented in support of the motion."); LCR 100(e). Even assuming the authenticity of the exhibit, the Court denies the petition.

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[4] Marin-Galdino also filed a "praecipe" consisting of a second letter signed by Dr. Mihn T. Nguyen. Dkt. No. 12. Litigants may not submit new evidence and arguments in a traverse without seeking leave of the Court. *McClellon v. Rickard*, No. 24-CV-10053 (VSB) (BCM), 2025 WL 3286917, at *10 (S.D.N.Y. June 24, 2025), *report and recommendation adopted in part, rejected in part on other grounds,* 2026 WL 686499 (S.D.N.Y. Mar. 11, 2026); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Local Civil Rule 7(m) is intended to allow for the correction of inadvertent errors, not for the submission of additional or late-breaking evidence or arguments. The filing is thus not properly before the Court and the Court will not consider it. However, even if the Court did consider it, it would not change the result here.

Respondents argue that Marin-Galdino's detention is neither punitive nor unconstitutional because he is receiving constitutionally adequate medical care and cannot demonstrate that his treatment amounts to punishment. Dkt. No. 7 at 5–10. They contend that his detention is lawful under 8 U.S.C. § 1231 because his detention following the reinstatement of his final order of removal is within the six-month window of presumptive reasonableness established in *Zadvydas*, and his removal remains reasonably foreseeable because the only thing preventing his removal is his appeal to the Ninth Circuit. *Id.* at 10–11.

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful,

unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Due Process Claim**

Marin-Galdino contends that the "Constitution does not permit the Government to disregard serious risks to the health and safety of persons held in civil detention" and that noncitizen detainees are entitled to "conditions of confinement that do not amount to punishment and to constitutionally adequate medical care." Dkt. No. 1 at 7. He argues that his ongoing civil detention is rendered unconstitutional "considering the serious and potentially irreversible medical consequences of continued confinement, the uncertainty surrounding the duration of detention, and the availability of conditions of supervision that can protect the Government's legitimate interests without continuing to incarcerate him." Dkt. No. 11 at 2.

Even assuming without deciding that habeas is an appropriate mechanism for Marin-Galdino to challenge his conditions of confinement, he has not shown that those conditions are unconstitutionally punitive. "[A] restriction is punitive where it is intended to punish, or where it is excessive in relation to its non-punitive purpose[.]" *Jones v. Blanas*, 393 F.3d 918, 933–34 (9th Cir. 2004) (citation modified). A civil detainee "is entitled to more considerate treatment than his criminally detained counterparts." *Id.* at 932 (citation modified). Accordingly, if conditions of civil confinement are equivalent to or more restrictive than criminal detention or civil post-commitment detention, they are presumptively punitive. *King v. Cnty. of Los Angeles*, 885 F.3d 548, 557 (9th Cir. 2018) (citing *Jones*, 393 F.3d at 932–33). If the presumption applies, the burden shifts to the government to show "(1) legitimate, non-punitive interests justifying the conditions of the

detainee's confinement and (2) that the restrictions imposed are not excessive in relation to these interests." *Id.* (citation modified).

Marin-Galdino has not shown or even alleged that the conditions of his confinement are equivalent to or more restrictive than criminal detention or civil post-commitment detention. *King*, 885 F.3d at 557. The note from his doctor indicates that, while in ICE detention, "he was seen for time-sensitive care in the Harborview Eye Institute," escorted by DHS officers. Dkt. No. 2 at 1. And although his doctor opines that he should be released from immigration detention so he can "consistently adhere to his essential post-operative care instructions," including "attending regular in-person exams at the Harborview Eye Institute; having continuous access to prescribed medications/eye drops (4x/day); and having the ability to maintain hygienic conditions on his person and in his environment," *id.*, Marin-Galdino does not contend in his petition that he is unable to meet any of these care instructions while in detention, nor does he provide any specifics regarding inadequate treatment, instead relying on the specter of permanent injury. *See generally* Dkt. No. 1.

By contrast, Respondents have submitted the declaration of Dr. Eddie Wang, a family medicine physician assigned to the ICE Health Service Corps as the Clinic Director at the NWIPC. Dkt. No. 10 at 1–2. Dr. Wang avers that Marin-Galdino reported use of his eye drops the day he was detained at NWIPC. *Id.* at 2. Dr. Wang saw Marin-Galdino the day after he was detained and learned of Marin-Galdino's eye condition, at which point Dr. Wang "continued all eye-drops" and placed a referral to an ophthalmologist. *Id.* at 2–3.[5] According to Dr. Wang, Marin-Galdino "did not complain of eye pain during the visit." *Id.* at 3. On July 5, 2026, Dr. Wang saw Marin-Galdino "due to eye pain," but discovered "no gross abnormalities on exam" and continued his eye drop

[5] Marin-Galdino's eye drops consist of: "Carboxymethylcellulose 0.5% 1-2 drops to left eye twice a day; and Prednisolone 1 % Suspension with 1 drop into left eye twice a day." *Id.*

regimen. *Id.* "During the visit, [Marin-Galdino] also reported to [Dr. Wang] that [his] eye doctor was at Harborview Medical Center." *Id.* On July 12, 2026, Dr. Wang again saw Marin-Galdino due to eye pain, but there were "no reported changes in conditions." *Id.* Dr. Wang noted that Marin-Galdino's ophthalmology appointment "was moved up to July 14, 2026." *Id.* On July 14, 2026, Marin-Galdino was seen by his ophthalmologist at Harborview, who increased the frequency of the Prednisolone eye drops, prescribed one week of antibiotic eye drops, and instructed Marin-Galdino to return "in approximately 4-6 weeks[.]" *Id.* "On July 23, 2026, [Marin-Galdino] had a follow up with [Dr. Wang] and report[ed] using eyedrops will alleviate [his] eye symptoms." *Id.* On August 7, 2026, Dr. Wang again saw Marin-Galdino after he complained of eye pain. *Id.* Dr. Wang avers he encouraged Marin-Galdino to comply with his eyedrop regimen, as Marin-Galdino had refused medication "on July 25, 2026, July 29, 2026, and August 5, 2026." *Id.* Marin-Galdino was scheduled to see his ophthalmologist again on September 2, 2026. *Id.* at 4.

In light of this ongoing care and Marin-Galdino's failure to identify any defect in his care, the Court does not find that his care at the NWIPC "has been so deficient as to make his confinement punitive in violation of due process." *Palacios Obregon v. Blanche*, No. C26-0484-KKE, 2026 WL 1223424, at *5 (W.D. Wash. May 5, 2026); *see also Saechao v. Scott*, No. 2:26-cv-00548-TMC, 2026 WL 626765, at *6 (W.D. Wash. Mar. 5, 2026) (denying emergency motion when petitioner "d[id] not show that any failures by NWIPC's medical staff 'were intended to punish him, or were excessive in relation to legitimate non-punitive purpose served by his detention.'" (quoting *Sorio v. Hermosillo*, No. 2:25-CV-02492-TL, 2026 WL 413530, at *7 (W.D. Wash. Feb. 13, 2026)). Moreover, even if Marin-Galdino had shown a Fifth Amendment violation with respect to his medical care, "he does not establish that such a violation would justify immediate release, as opposed to injunctive relief that would leave him detained while ameliorating any unconstitutional conditions at the NWIPC." *Ortiz v. Barr*, No. 20-cv-497, 2020

WL 13577427, at *7 n.8 (W.D. Wash. April 10, 2020)); *see also Doe v. Bostock*, No. 24-cv-0326, 2024 WL 3291033, at *8 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, 2024 WL 2861675 (W.D. Wash. June 6, 2024). Accordingly, the Court does not conclude that Marin-Galdino is being held in punitive conditions or that he is entitled to release.

**C. *Zadvydas* Claim**

As discussed above, Marin-Galdino has been detained since June 19, 2026. Dkt. No. 9 at 3. Respondents contend that he is held lawfully pursuant to 8 U.S.C. § 1231(a)(6) because he is still within the six-month "presumptively reasonable" period of detention following reinstatement of his order of removal, and in any case, his removal is reasonably foreseeable because "ICE routinely executes removal orders to Mexico, and the petition for review and temporary stay of removal are the only apparent barriers preventing [his] immediate removal." Dkt. No. 7 at 10, 12. Marin-Galdino argues that his detention violates the Fifth Amendment because his removal "is presently stayed by the Ninth Circuit" and is therefore not reasonably foreseeable. Dkt. No. 1 at 10–12 (citing *Zadvydas*, 533 U.S. at 690).

Marin-Galdino's detention is presumptively reasonable for six months after his final removal order, or until December 19, 2026. Respondents have submitted evidence that ICE expects to "expeditiously execute [his] removal to Mexico in the event the Ninth Circuit dismisses his [petition for review] or lifts his temporary stay of removal." Dkt. No. 9 at 4. Under these circumstances, Marin-Galdino has not provided sufficient evidence or argument to overcome the presumption that his continued detention is reasonable. He is thus not entitled to release under *Zadvydas*. *See Medina v. Bondi*, No. CV-26-00178-PHX-MTL (DMF), 2026 WL 160830, at *1 (D. Ariz. Jan. 21, 2026) (denying relief under *Zadvydas* when "Petitioner's detention is within the

presumptively reasonable period"); *Sun v. Hermosillo*, No. 2:26-CV-00215-LK, 2026 WL 510666, at *3 (W.D. Wash. Feb. 24, 2026) (same).[6]

[6] Even assuming Marin-Galdino's appeal will remain pending beyond the presumptively reasonable six-month period, the result would not change. All federal appellate courts that have considered the issue have concluded that relief under *Zadvydas* is unavailable where delay in removal is caused by ongoing litigation. As the Fourth Circuit put it:

> Critically, withholding-only proceedings are finite. In the ordinary course, they continue only for such time as a determination can be made concerning the legality of removing the [noncitizen] to the designated country. If the [noncitizen] fails to obtain withholding-only relief, and absent any other diplomatic or logistical barriers, then the government can—and must—promptly carry out the [noncitizen]'s removal to the designated country. If the [noncitizen] prevails, then the government may still remove the [noncitizen] to another country, assuming it continues to pursue removal at all. In either case, however, the withholding-only proceedings end. And if the withholding-only proceedings have a definite ending point, then so too must the detention pending the resolution of those proceedings. As such, ongoing withholding-only proceedings, even lengthy ones, simply do not present the same risk of "indefinite and potentially permanent" detention at issue in *Zadvydas*. Stated differently, ongoing withholding-only proceedings do not, standing alone, cast doubt on the foreseeability of a[ noncitizen]'s removal in the future.

*Castaneda v. Perry*, 95 F.4th 750, 757–58 (4th Cir. 2024) (citation omitted). Similarly, the First Circuit in *G.P. v. Garland* held that a noncitizen who was "being detained because his CAT proceedings remain[ed] pending" was not in removable-but-unremovable limbo because "once [his] withholding-only proceedings end[ed], he w[ould] either be removed to the Dominican Republic or the government w[ould] have to begin the process of finding a different country to accept him." 103 F.4th 898, 902 (1st Cir. 2024) ("In concluding that [petitioner] is not entitled to habeas relief, we align ourselves with all of the circuit courts that have considered analogous circumstances."). The Sixth Circuit in *Martinez v. Larose* likewise found that removal was "reasonably foreseeable" even where the noncitizen's withholding-only proceedings would have to "wind back through the immigration courts" if he prevailed, because "[i]f [the noncitizen] d[id] not prevail in his pending actions before [the Sixth Circuit] and the BIA, nothing should impede the government from removing him to El Salvador," and if the noncitizen did prevail at the Sixth Circuit or BIA, he could "refile his § 2241 petition and argue at that point that there is no significant likelihood of removal in the reasonably foreseeable future." 968 F.3d 555, 565 (6th Cir. 2020). The Tenth Circuit came to the same conclusion in *Soberanes v. Comfort*: where the delay in removal is "directly associated with a judicial review process that has a definite and evidently impending termination point," the noncitizen's detention "is clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*[.]" 388 F.3d 1305, 1311 (10th Cir. 2004). Finally and most significantly, the Ninth Circuit applied *Zadvydas* in a case where the noncitizen was detained under Section 1226(a), concluding that although the noncitizen's removal "ha[d] certainly been delayed by his pursuit of judicial review of his administratively final removal order, he [wa]s not stuck in a 'removable-but-unremovable limbo.'" *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008).

As in *Castenada*, *G.P.*, and *Prieto-Romero*, there is no dispute regarding Marin-Galdino's removability or the government's ability to remove him to his country of origin (or a third country, if his appeal is successful). Thus, "[i]f [Marin-Galdino] does not prevail in his withholding-only proceedings, then nothing stands in the way of his prompt removal to [Mexico]," and "if he does succeed, nothing would prevent ICE from removing him to another country." *Castaneda*, 95 F.4th at 758. Marin-Galdino has also not shown any evidence of bad faith or undue delay on the part of the government, *see G.P.*, 103 F.4th at 902, and a review of the Ninth Circuit docket indicates that the Government has filed a motion to dismiss and opposition to the stay of removal, indicating they are actively pursuing resolution of his appeal. *Marin Galdino v. Blanche*, No. 26-4871, Dkt. No. 12 (9th Cir. Sept. 25, 2026). For these reasons, the stay resulting from Marin-Galdino's ongoing appeal does not create a "removable-but-unremovable limbo" because "ongoing withholding-only proceedings alone are insufficient to demonstrate that removal is no longer reasonably foreseeable." *Castaneda*, 95 F.4th at 758.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Marin-Galdino's petition for habeas corpus. Dkt. No. 1.

Dated this 8th day of October, 2026.

Lauren King
United States District Judge